Christopher DOCHERTY, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 4, 2006.

Decided May 9, 2006.

Nicholas M. Panko, St. Clair, for petitioner.

Charles F. McElwee, Camp Hill, for Intervenor, Pottsville Hospital.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Christopher Docherty (Claimant) petitions for review of the August 22, 2005, order of the Unemployment Compensation Board of Review (UCBR), which reversed a referee's decision granting unemployment compensation benefits (UC benefits) to Claimant. We reverse.

Claimant worked full time as a phlebotomist for Pottsville Hospital (Employer). On March 2, 2005, Claimant entered the room of a five-year-old female patient (Patient). The room had two beds approximately eight feet apart; Patient was in one bed and another young patient occupied the other bed. Patient's parents were visiting her, and the mother of the second patient also was visiting her child. Upon entering the room, Claimant introduced himself to Patient and her parents, and he stated that he was there to withdraw blood from Patient. At that point, Patient's par-

ents, particularly her father, asked Claimant why blood was being taken. Claimant responded that the blood would be used for a rapid HIV and hepatitis test. After Claimant left the room, Patient's mother vocalized her disapproval of Claimant's stating the reason for the blood test in the presence of others. (UCBR's Findings of Fact, Nos. 1–3, 7–12.)

Employer subsequently discharged Claimant for violating Employer's confidentiality policy (Policy), which provides in pertinent part: "[e]mployees must safeguard lists, reports, documents, and discussions, etc. containing patient information from unauthorized viewing and/or listening." (O.R. at exh. C, Attachment 2.) According to Employer, Claimant violated the Policy by discussing Patient's health information in front of individuals (Patient's roommate and the roommate's mother), who had no need or right to know the substance of Patient's protected health information. (UCBR's Findings of Fact, Nos. 4–6.)

Following his discharge, Claimant applied for UC benefits from the local job center, which denied Claimant's application.[1] Claimant appealed, and a referee held a hearing at which both Claimant and representatives of Employer testified.

Claimant testified that, on March 2, 2005, he received orders from Employer to withdraw blood from Patient in her shared room. Claimant stated that Employer did not segregate patients into single rooms or provide soundproof rooms in order to discuss confidential matters. (N.T. at 3, 7.)

According to Claimant, he arrived in Patient's room to withdraw the blood, and Patient's parents asked him what tests were going to be performed on Patient. Claimant stated that he answered their questions believing that, because the parents asked for the information, there was nothing wrong with disclosing this information to them. (N.T. at 6.) Claimant acknowledged that Employer offered seminars regarding the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. 104–191, 110 Stat.1936 (codified as amended in scattered sections of 18, 26, 29 and 42 U.S.C.), and that HIPAA is very strict about disclosing confidential information to unauthorized individuals. (N.T. at 12–13.) However, Claimant testified that, as he understood HIPAA, it allowed health care providers to have confidential, treatment-related conversations at a treatment facility, even if those conversations might incidentally be overheard by others. (N.T. at 6–7.) On cross-examination, Claimant acknowledged that he was aware of Employer's Policy and that he had signed Employer's form indicating that he understood the Policy. (N.T. at 12–13.)

In opposition to Claimant's appeal, Employer offered the testimony of, *inter alia*, Ann Maccarone, Claimant's supervisor.[2] Maccarone explained the Policy, which had been in effect since 1993. In addition, Maccarone testified that Employer reviewed the Policy annually with its employees, and she stated that employees were informed that a violation of the Poli-

---

1. The job center denied benefits to Claimant on the grounds that Claimant voluntarily terminated his employment. However, both the referee and the UCBR concluded that Claimant was discharged, and, because Employer did not appeal this determination, we need not address it.

2. Employer also presented the testimony of Jason C. Wright, a student nurse who accompanied Claimant to Patient's room and testified about the events that took place there on March 2, 2005. According to Wright, when Patient's parents asked Claimant what the blood tests were for, Claimant "stated" that the blood would be used for a rapid HIV and hepatitis test. (N.T. at 16–19.)

cy could result in an employee's immediate termination. Maccarone testified further that Employer offered seminars to employees on the requirements of HIPAA, that she had reviewed the Policy with Claimant and that both she and Claimant signed the acknowledgment form indicating that Claimant understood the Policy. Maccarone stated that Employer is not required to provide soundproof rooms or individual rooms for its patients, and she confirmed that Claimant did not invite anyone into Patient's room and that Patient's parents specifically asked Claimant about the purpose of their daughter's blood test. (N.T. at 19–24.)

After considering the evidence, the referee reversed the denial of benefits, holding that, because Claimant did not deliberately violate Employer's Policy, he was eligible for UC benefits pursuant to section 402(e) of the Pennsylvania Unemployment Compensation Law (Law).[3] Employer appealed to the UCBR, which, after making additional findings of fact,[4] reversed. The UCBR reasoned that Claimant had violated Employer's Policy without justification or good cause, and that this violation constituted willful misconduct rendering Claimant ineligible for UC benefits. Claimant now petitions this court for review.[5]

Section 402(e) of the Law provides in relevant part: "[a]n employe shall be ineligible for compensation for any week ... (e) [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct[6] connected with his work...." 43 P.S. § 802(e). The employer bears the burden of proving willful misconduct in order to disqualify a claimant from receiving benefits. *County of Luzerne v. Unemployment Compensation Board of Review,* 148 Pa. Cmwlth. 473, 611 A.2d 1335 (1992). Where the claimant's misconduct is based on the violation of an employer's rule or policy, the employer bears the burden of establishing both the existence of the rule or policy and its violation by the claimant. *Id.* Once the employer has established the rule and its violation, the burden shifts to the claimant to demonstrate either that the rule is unreasonable or that good cause existed to violate the rule. *Id.* Whether a claimant has good cause to violate an employer's rule or policy is a question of law subject to this court's review and should be viewed in light of all of the attendant circumstances. *Dunkle v. Unemployment Compensation Board of Review,* 91 Pa. Cmwlth. 1, 496 A.2d 880 (1985); *Sheaffer v. Unemployment Compensation Board of Review,* 73 Pa.Cmwlth. 280, 457 A.2d 1037 (1983). A claimant has good cause if his or her actions are justifiable and reasonable

---

**3.** Act of December 5, 1936, Sec. Ex.Sess. P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).

**4.** In an unemployment compensation case, the UCBR is the ultimate fact finder and is empowered to make credibility determinations. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985).

**5.** Our scope of review is limited to determining whether constitutional rights are violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence.

Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**6.** In *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 83–84, 351 A.2d 631, 632 (1976), our supreme court defined "willful misconduct" as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe's duties and obligations to the employer.

under the circumstances. *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976).

■ There is no dispute that Employer maintains a reasonable policy requiring all of its employees to safeguard confidential patient information from unauthorized disclosure. Further, Claimant acknowledged that he was aware of this policy and that he disclosed Patient's health information in the presence of individuals other than Patient and Patient's parents. Nevertheless, Claimant argues that, contrary to the UCBR's determination, given the circumstances surrounding the disclosure, Claimant established that he had good cause to violate the Policy. Therefore, Claimant contends that his conduct did not constitute willful misconduct, and the UCBR erred in denying him benefits.[7] We agree.

■ Whether a claimant's conduct constitutes willful misconduct rendering the claimant ineligible for benefits is a question of law that is subject to plenary review by the court. *Navickas v. Unemployment Compensation Board of Review,* 567 Pa. 298, 787 A.2d 284 (2001); *County of Luzerne.* A determination of what conduct will rise to the level of willful misconduct requires a consideration of " 'all of the circumstances, including the reasons for the [claimant's] noncompliance with the employer's directives.' " *Navickas,* 567 Pa. at 304, 787 A.2d 284 (quoting *Rebel v. Unemployment Compensation Board of Review,* 555 Pa. 114, 117, 723 A.2d 156, 158 (1998)) (emphasis added). Where the action of the claimant is justifiable or reasonable under the circumstances, i.e., where the claimant has good cause for violating the rule, it is not willful misconduct because it cannot properly be charged as a willful disregard of the employer's interest

or rules or of the standard of conduct which the employer has a right to expect. *Eshbach v. Unemployment Compensation Board of Review,* 855 A.2d 943 (Pa. Cmwlth.2004).

Here, Employer orders its employees, like Claimant, to provide medical treatment to patients. These patients share rooms with other patients, and those other patients may have visitors during treatment periods. Maccarone acknowledged that Employer is not required to provide and does not offer alternative soundproof facilities, so that employees treating patients in shared rooms may discuss sensitive patient information without the likelihood that this information will be overheard. In this case, Claimant was ordered to Patient's room, which she shared with another patient, to perform his duties as a phlebotomist. Prior to doing this, *in the presence of Patient's roommate and the roommate's mother,* Patient's parents asked Claimant why he was drawing blood from patient. Claimant simply *responded* to Patient's parents' *direct question.* Contrary to Employer's argument, there is no evidence in the record to indicate that Claimant responded loudly or that Patient's roommate or the roommate's mother overheard Claimant's response, much less that they were embarrassed by Claimant's response as suggested by Employer. (Employer's brief at 12.)

In light of Employer's practice of placing patients in shared rooms, requiring its employees to provide medical treatment in these rooms, allowing visitors during treatment periods, and failing to provide alternative locations for its employees to discuss sensitive patient information, we

---

**7.** Although Claimant asserts that Employer's Policy is unreasonable when applied to the present circumstances, Claimant is essentially arguing that the circumstances created by Employer gave him good cause to violate the Policy.

conclude that Employer had no reasonable expectation that all patient information could remain totally confidential. When these circumstances are considered in conjunction with the fact that Patient's parents actually *asked* Claimant why he was drawing blood, in Patient's shared room with others present, we further conclude that Claimant acted reasonably when he responded. That is, under the circumstances, Claimant had good cause to violate Employer's Policy concerning safeguarding patient information from unauthorized listening. Therefore, Claimant's conduct did not rise to the level of willful misconduct so as to render him ineligible for UC benefits under section 402(e) of the Law.

Accordingly, we reverse.

Judge COHN JUBELIRER concurs in the result only.

### ORDER

AND NOW, this 9th day of May, 2006, the order of the Unemployment Compensation Board of Review, dated August 22, 2005, is hereby reversed.