# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph R. Reviello, Jr.,                    :
                 Petitioner          :
                                 :
          v.                    :    No. 2315 C.D. 2014
                                 :    Submitted: June 12, 2015
Unemployment Compensation                   :
Board of Review,                            :
                 Respondent          :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: July 31, 2015**

In this appeal, Joseph R. Reviello, Jr. (Claimant), representing himself, asks whether the Unemployment Compensation Board of Review (Board) erred in determining he was ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (Law)[1] (relating to willful misconduct). Claimant contends the Board's findings are not supported by substantial evidence, his conduct did not amount to disqualifying willful misconduct, and he was wrongfully discharged for discriminatory reasons. Upon review, we affirm.

Claimant worked for Tobyhanna Army Depot (Employer), apparently affiliated with the Department of the Army, as a full-time electronics worker from

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e).

May 2007 until August 2014. After his separation from employment, Claimant applied for UC benefits, which were granted. Employer appealed, and a referee held a hearing.

At the hearing, the referee heard testimony from Claimant and Employer's three witnesses: Eric Longenbach, Employer's Human Resource Specialist; Aileen Roth, Administrative Support Assistant with the U.S. Army Health Clinic (Assistant); and, Eva Granville, Employer's Employee Assistance Program Manager and Army Substance Abuse Program Manager (Manager).[2]

Based on the evidence presented, the referee issued a decision in which he found the following facts. In October 2013, Employer and Claimant entered into a last chance agreement, which provided that for the next two years, any misconduct, violation of law, or violation of any Employer regulation or policy by Claimant would cause his termination from employment. As part of the last chance agreement, Employer required Claimant to complete an anger management program. This included taking one anger management course and attending six individual in-person counseling sessions. Referee's Op., 9/30/2014, Findings of Fact (F.F.) Nos. 1, 2, 8-10.

In December 2013, Claimant applied for leave from employment under the Family and Medical Leave Act of 1993 (FMLA).[3] Employer approved FMLA leave for a period of 12 weeks, and then extended his leave by 30 days. In

---

[2] Although Claimant's wife appeared and occasionally interjected, she did not testify.
[3] 29 U.S.C. §§2601–2654.

January 2014, while on leave, Claimant requested accommodation for his disability. In February, March and May 2014, Employer sent Claimant three letters requesting medical documentation regarding his disability accommodation request. In May 2014, Claimant provided Employer a note from his physician (discussed below), but it did not address Employer's concerns. F.F. Nos. 3-5, 12, 13.

Before returning to work, Employer's physician saw Claimant for a fitness-for-duty examination based on Claimant's extended leave for medical reasons. Employer's physician was not able to ascertain whether Claimant was able to return to work, and he requested further medical documentation from Claimant's physician. Of significance to our disposition, in June 2014, Employer directed Claimant to appear for a medical examination at its health clinic on July 8, 2014, for an evaluation regarding Claimant's request for a disability accommodation. Claimant cancelled the appointment the day before the appointment. Although Claimant indicated he would reschedule, he never did. F.F. Nos. 6, 7, 14, 15.

With regard to the last chance agreement conditions, Claimant completed the anger management coursework. However, he did not complete the six in-person counseling sessions. At the end of July 2014, Manager notified Employer that Claimant did not complete the anger management program. F.F. Nos. 9, 11, 16.

3

In August 2014, Employer discharged Claimant for failing to provide medical documentation regarding his request for a disability accommodation and for violating the last chance agreement because he did not attend the required in-person counseling sessions. F.F. No. 17.

The referee credited the testimony of Employer's witnesses, but he found Claimant's testimony "incredible." Referee's Op., at 2. The referee concluded Claimant's actions of not attending counseling sessions or providing required medical documentation were contrary to the standards of behavior an employer can expect of its employee. Thus, the referee denied Claimant benefits under Section 402(e) of the Law. Claimant appealed.

The Board affirmed, adopting and incorporating the referee's findings and conclusions in their entirety. The Board added:

> [T]he credible testimony of [Employer's] witnesses was sufficient to establish that [Claimant] violated the last chance agreement. [Claimant] did not offer credible testimony establishing good cause for failing to provide the required documentation to support his request to accommodate his disability or failing to attend all six in-person anger management counseling sessions. [Claimant] never informed [Employer] that he was medically unable to participate in the counseling sessions in person. Further, [Manager] credibly testified that when [Claimant] requested to participate in the counseling sessions by telephone, she explained that the sessions must be completed in person and, if [Claimant] felt uncomfortable participating in [Employer's] sessions, [Employer] would refer him to an outside program that was closer to his home. [Claimant] never requested an alternate counseling program.

4

Bd. Op., 11/14/2014, at 1.

In addition, the Board expressly discredited Claimant's testimony that Employer discharged him for filing a complaint with the Equal Employment Opportunity Commission. Claimant's appeal to this Court followed.

On appeal,[4] Claimant argues the Board's determination of willful misconduct is erroneous and is not supported by substantial evidence. Contrary to the Board's decision, Employer did not discharge Claimant for failing to provide medical documentation regarding his request for a disability accommodation. Rather, Employer terminated his employment for violating the last chance agreement because he did not attend a fitness-for-duty examination or complete anger management counseling. According to Claimant, his failure to attend a medical appointment or complete anger management counseling did not constitute willful misconduct because his actions were justified. Instead, Claimant maintains Employer discriminated and retaliated against him because of his disability in violation of the FMLA and Americans with Disabilities Act of 1990 (ADA).[5]

Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to his discharge … from work for willful misconduct connected with his work …."

---

[4] Our review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether errors of law were committed or whether constitutional rights were violated. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth.), appeal denied, 97 A.3d 746 (Pa. 2014).

[5] 42 U.S.C. §§12101–12213.

43 P.S. §802(e). "[W]illful misconduct is defined by the courts as: (1) wanton and willful disregard of an employer's interests; (2) deliberate violation of rules; (3) disregard of the standards of behavior which an employer can rightfully expect from an employee; or, (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations." Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006, 1009 (Pa. Cmwlth.), appeal denied, 97 A.3d 746 (Pa. 2014) (citing Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422 (Pa. 2002)).

The employer bears the initial burden of proving a claimant engaged in willful misconduct. Id. When asserting a discharge based on a violation of a work rule, an employer must establish the existence of the rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. Id. (citing Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008)).

Once an employer meets its burden, the burden shifts to the employee to prove good cause for his actions or the unreasonableness of the work rule. Johns. An employee establishes good cause where his actions are justified or reasonable under the circumstances. Docherty v. Unemployment Comp. Bd. of Review, 898 A.2d 1205 (Pa. Cmwlth. 2006).

Further, in UC cases, the Board is the ultimate fact-finder and is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. Ductmate. It is irrelevant whether the record contains

6

evidence that would support findings other than those made by the Board; the proper inquiry is whether the evidence supports the findings actually made. Id. Additionally, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. Id.

Here, Employer discharged Claimant for violating the last chance agreement. Certified Record (C.R.), Item No. 4, Ex. SC-22 (Notice of Removal); see C.R., Item No. 2, at ¶20 (Internet Initial Claims form); see C.R., Item No. 6, SC-4 (Notice of Appeal). Specifically, it dismissed Claimant for not attending a medical examination and for not completing the anger management program. C.R., Item No. 4, Ex. SC-22; Referee's Hr'g, 9/29/14, Notes of Testimony (N.T.) at 7, 12. However, Employer did not discharge Claimant for failing to provide medical documentation as found by the Board.[6] C.R., Item No. 4, Ex. SC-22. Nevertheless, an employer only needs to establish one reason amounting to willful misconduct in order to satisfy its burden. Glenn v. Unemployment Comp. Bd. of Review, 928 A.2d 1169 (Pa. Cmwlth. 2007). Therefore, we examine whether Claimant's discharge for violating the last chance agreement constituted willful misconduct rendering him ineligible for UC benefits.

### 1. Fitness-for-Duty Examination

Pertaining to Claimant's failure to attend a fitness-for duty examination in July 2014, as part of the last chance agreement Claimant agreed that "[e]ngaging in ANY misconduct" will result in his "immediate removal without further written notice," and "any misconduct, violation of law,

---

[6] In fact, the Board concedes this point of error. Resp't's Br. at 8 n.4.

7

regulations/policy, on his part, occurring within the next two (2) years, is likewise just cause for his removal without any additional notification or proposal." C.R., Item No. 4, Ex. SC-23 at ¶¶5, 6. In the event of a violation, Claimant waived any rights to UC appeals. Id. at ¶7(b).

On June 27, 2014, Employer ordered Claimant to attend a fitness-for-duty exam at the U.S. Army Health Clinic on July 8, 2014. C.R., Item No. 4, Ex. SC-22; Pet'r's Br. at 12. The notice advised: "failure to report for the [fitness-for-duty] examination may be considered an act of misconduct, which may result in follow up corrective action." C.R., Item No. 4, Ex. SC-22.

Assistant testified Employer the notice was "an order to attend" the exam. N.T. at 37. However, the day before the appointment, Claimant cancelled for non-emergency reasons. N.T. at 36. When Assistant asked if Claimant wished to reschedule, he responded he wanted to check with some people first, but he never called her back to reschedule. Id.

At the hearing, Claimant admitted he did not attend the examination. Id. at 38. He explained he did not want to go because Employer's doctor already examined him in May 2014. Id. He also testified he had a routine dental appointment that same day. Id. at 39. However, these excuses do not constitute just cause for violating Employer's mandate to attend the medical exam in violation of the last chance agreement. Moreover, Claimant was well aware that his refusal to attend could be grounds for discharge. See id. at 38.

Relying on the ADA, Claimant now attempts to justify his nonattendance by asserting Employer was prohibited from requiring a medical examination or making any disability-related inquiries. However, medical examinations and disability-related inquiries are permitted when the inquiry is "job-related and consistent with business necessity." 42 U.S.C. §12112(d)(4)(A); accord 29 C.F.R. §1630.14(c).

Here, Claimant was on an extended leave of absence for medical reasons. Before returning to work, Claimant sought accommodations to his work schedule and assigned duties based on his disability. C.R., Item No. 4, Ex. SC-17. Specifically, he requested:

> a modified schedule to include the flexibility or adjustment of my arrival and departure times as the need arises, periodic additional short term breaks, the ability to take leave with or without pay as the need arises and without the fear of reprisal. I request a reserved parking location within 25 feet of the entrance to my assigned duty location.

Id. However, Claimant's disability and the need for accommodations he requested were not obvious. See id.

In response to Claimant's request for a disability accommodation, Employer sent Claimant three letters soliciting medical documentation. C.R., Item No. 9, Ex. E-2. Specifically, Employer requested:

> [S]upporting medical documentation in order to make an administrative determination as to the nature, severity, and the duration of your medical condition and the impact of such on your ability to successfully perform the

9

duties of your position, currently and/or in the future and to maintain a full-time work schedule. The medical information you provide should elaborate on the job related duties that may be impacted by your medical situation ...; provide rational as to why you may or may not require reasonable accommodation; your ability to maintain a regular, full-time work schedule; and your current ability to perform the regular and recurring duties of your position and other positions at [Employer], Tobyhanna, PA.

* * *

3. This request is also deemed necessary due to your 30 January 2014 request for reasonable accommodation.

C.R., Item No. 9, Ex. E-2 (Employer's First Request for Medical Documentation, 2/10/14) at ¶1, 3. Although the submission of medical documentation was "voluntary," Employer advised that if Claimant did not provide "complete documentation," it may require him to undergo a fitness-for-duty examination. Id. at ¶4.

Eventually, in May 2014, Claimant provided a note from his doctor, which advised:

[Claimant's] condition is chronic and will not go away and symptoms ... wax and wane, resulting in periods of incapacitation from work. [The type of condition[7]] is a debilitating and complex disorder characterized by profound fatigue that is not improved by bed rest and that may be worsened by physical or mental activity. Symptoms affect several body systems and may include weakness muscle pain, la[ck] of energy, impaired mental

---

[7] The note identified Claimant's condition, which we will not disclose in this opinion out of respect for Claimant's privacy.

10

> concentration, and insomnia, which can result in reduced participation in daily activities.

C.R., Item No. 4, Ex. SC-14A. The note identified Claimant's condition, prognosis and symptoms. Id. However, it did not address Claimant's ability to return to work or recommend appropriate accommodations for his disability. See id. Contrary to Claimant's assertions, the physician's description that Claimant may be "incapacitated from work" is far too vague to establish functionality. See id.

When Claimant did not furnish additional documentation, Employer initially directed Claimant to attend a fitness-for-duty examination in May 2014. Employer's physician recommended that Claimant remain at home "until [management] determines if [he] can be accommodated." C.R., Item No. 4, Ex. SC-16. Employer again requested medical documentation substantiating his request for accommodations. C.R., Item No. 9, Ex. E-2 (Employer's Third Request for Medical Documentation, 5/29/14) at ¶1. When Claimant did not respond, Employer scheduled a second fitness-for-duty exam for July 2014.

Based on Claimant's accommodation request, Employer had a valid business interest in determining whether Claimant could perform essential functions of the job, and what accommodations were reasonable to perform those functions before Claimant's return to work. Employer's fitness-for-duty examination was clearly "job-related and consistent with business necessity." By disobeying Employer's mandate to attend the exam, without good cause, Claimant clearly violated the terms of the last chance agreement.

11

## 2. Anger Management Program

As to the successful completion of the anger management program, Claimant agreed to "enroll in, participate fully and successfully complete a structured [a]nger [m]anager [p]rogram ... approved by [Manager]." C.R., Item No. 4, Ex. SC-23 at ¶3(a). Employer granted Claimant a 30-day leave of absence to enter into and complete the program. Id. at ¶3(b). Upon returning to work, Employer required Claimant to provide evidence of his participation and completion of the program. Id. at ¶3(e). The failure to complete the anger management program by April 1, 2014, would result in Claimant's "removal from federal service without further proposal." Id. at ¶3(f).

Manager approved a program that required Claimant to attend an anger management course and six in-person counseling sessions. N.T. at 18, 27-28, 33. Although Claimant completed the coursework, he did not complete the in-person counseling sessions. Id. at 18-19, 27-28. Manager testified she notified Claimant and his supervisor of the six sessions and the dates. Id. at 28. She scheduled Claimant's hour-long anger management counseling sessions during work hours. Id. at 31. However, counseling sessions were available to Claimant whether he was at work or on leave. Id. at 22; 31. Claimant was not required to be in active status to complete the sessions. Id. at 31.

Manager testified Claimant attended only one in-person session. Id. at 29. After that, he requested to participate by telephone. Id. at 30. Manager advised him counseling must be completed in person, not by telephone. Id. at 30, 32. She offered to provide him referrals to different programs closer to his home,

but he did not request a referral. Id. at 30. Although Claimant called Manager in June 2014, the call did not constitute counseling for anger management, and they did not discuss resuming counseling sessions. Id. In July 2014, Manager drafted a memo to Employer advising that Claimant did not successfully complete the anger management program. Id.

Claimant does not dispute he did not attend the counseling sessions. Instead, he asserts he was precluded from attending any in-person sessions while out on FMLA leave. Before his FMLA leave, Employer granted Claimant leave so that Claimant could enter and complete the anger management program. C.R., Item No. 4, Ex. SC-23 at ¶3(b); see N.T. at 21. Importantly, even if Claimant's FMLA leave exempted Claimant from participating in the anger management program, Claimant made no attempt to resume counseling when his FMLA leave expired in April 2014. N.T. at 30.

Insofar as Claimant asserts he was medically unable to attend in-person counseling sessions because of his disability, he did not inform Employer of this. Id. at 52. In March 2014, Claimant asked Manager if he could participate in the counseling sessions by telephone. C.R., Item No. 4, Ex. SC-15. However, he did not relate his telephone accommodation request to his disability or identify physical or mental limitations that prevented him from attending the one-hour, in-person counseling sessions. See id.

As discussed above, in response to Claimant's January 2014 accommodation request, Employer sent Claimant three letters soliciting medical

13

documentation. C.R., Item No. 9, Ex. E-2. Employer requested Claimant to provide medical documentation as to the nature, severity and duration of Claimant's medical condition and the impact of such on his ability to perform his job. C.R., Item No. 9, Ex. E-2 (Employer's Request for Medical Documentation, 2/10/14). Employer also asked Claimant to provide medical information including "[a] recommendation as to what type of positions you may potentially perform in and for which you may qualify, and any type of accommodation that would allow you to perform in any these positions." Id. at ¶4(f).

Although Claimant provided Employer a note from his physician in May 2014, it did not address Employer's concerns regarding Claimant's ability to return to work or establish the need for the accommodations requested, including Claimant's request to participate in the counseling sessions by telephone. See C.R., Item No. 4, Ex. SC-14A; C.R., Item No. 9, Ex. E-2 (Employer's Third Request for Medical Documentation, 5/29/2014). The lack of more useful, functional guidelines from Claimant's physician was part of the reason Employer ordered the fitness-for-duty examination in July 2014.

Claimant appears to operate under the misapprehension that an employer must oblige any accommodation request, regardless of its connection to the disability. Rather, an employer must "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. §12112(b)(5)(A) (emphasis added). An

14

employer must "identify the precise limitations resulting from the [employee's] disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. §1630.2(o)(3). The search for the appropriate reasonable accommodation is:

> best determined through a flexible, interactive process that involves both the employer and the [individual] with a disability. As such, both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith. It logically follows, therefore, that a party who fails to communicate or engage in a dialogue with the other party is not acting in good faith.

Stultz v. Reese Bros., Inc., 835 A.2d 754, 761 (Pa. Super. 2003) (internal quotations and citations omitted).

Although Employer attempted to "identify the precise limitations resulting from the [Claimant's] disability and potential reasonable accommodations that could overcome those limitations," 29 C.F.R. §1630.2(o)(3), Claimant did not engage in this interactive process. Claimant did not prove he was medically unable to participate in in-person counseling sessions because of his disability or that the requirement to participate in-person was unreasonable to justify his non-completion of the anger management program.

### 3. Discrimination & Retaliation

As for Claimant's contentions that Employer discriminated and retaliated against him because of his disability, such claims are not supported by credible evidence. The Board, as fact-finder, rejected Claimant's testimony in favor of Employer's evidence. Claimant's assertions in this regard essentially

15

challenge the Board's credibility and evidentiary weight determinations, which are beyond our review.  See Ductmate.  As substantial evidence supports the Board's necessary findings, Claimant's argument to contrary is unavailing.

In conclusion, the record contains substantial evidence to support a termination for willful misconduct.  Claimant's refusal to attend a fitness-for-duty examination and complete the anger management program amounted to violations of the last chance agreement.  Claimant did not establish good cause for his actions.  Therefore, the Board did not err in determining Claimant was ineligible for UC benefits under Section 402(e) of the Law.

Accordingly, we affirm.


_____
ROBERT SIMPSON, Judge

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Joseph R. Reviello, Jr., : 
          Petitioner : 
           : 
          v. : No. 2315 C.D. 2014
           : 
Unemployment Compensation : 
Board of Review, : 
          Respondent : 

# **O R D E R**

**AND NOW**, this 31st day of July, 2015, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                            _____

                            ROBERT SIMPSON, Judge