# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shannon Bell,  :
   :
        Petitioner  :
   :
        v.  :    No. 1324 C.D. 2015
   :
Unemployment Compensation  :    Submitted: November 25, 2015
Board of Review,  :
   :
        Respondent  :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED:  April 26, 2016**

Shannon Bell (Claimant) petitions for review of an Order of the Unemployment Compensation (UC) Board of Review (Board) affirming a UC Referee's (Referee) Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the UC Law (Law).[2]  On appeal, Claimant argues that the

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(e).  Section 402(e) provides that an employee is ineligible for UC benefits if "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." Id.

Board erred in finding him ineligible because: (1) Waste Management (Employer) did not satisfy its burden of proving willful misconduct because he did not intentionally or deliberately violate Employer's work rule; (2) even if Claimant did violate the work rule, he had good cause for doing so; and (3) Employer unreasonably applied its work rule. Because we conclude that Claimant established good cause for not complying with Employer's work rule, we reverse.

Claimant was employed by Employer as a driver from January 6, 2014 until he was discharged on November 28, 2014 for violating Employer's rule requiring employees to report accidents or property damage to Employer immediately. Claimant filed an internet claim for UC benefits on January 4, 2015, wherein he stated that he was discharged for causing "Damage to property . . . The mailbox came off the post. No damage to the truck." (Internet Initial Claims, R. Item 2[3].) In response to Claimant's claim, Employer stated that Claimant was discharged, not for the accident, "but for not reporting it immediately to the manager."[4] (Employer's Separation Information, R. Item 3.) The UC Service Center found Claimant ineligible for benefits pursuant to Section 402(e) of the Law. (Notice of Determination, R.R. at 3A.)

Claimant appealed the UC Service Center's determination to the Referee, and a hearing was held on April 23, 2015. Employer appeared with its Tax Consultant Representative (Tax Consultant) and one witness, Employer's

---

[3] References to the reproduced record are designated as "R.R. at ___." References to the certified record are designated as "R. Item ___."

[4] Employer also stated that Claimant did not intentionally damage the equipment or property. (Employer's Separation Information, R. Item 3.)

2

Residential Round Manager (Round Manager), as well as documentary evidence. Claimant appeared pro se with one witness.[5]

Round Manager testified that Claimant was "discharge[d] for failure to report an accident immediately to his route manager." (Hr'g Tr. at 5, R.R. at 20A.) Round Manager further testified that he received notice of the accident when "the driver that [Claimant] was with reported it at the check-in window to [his] opt-specs staff specialist, . . . and after it was reported by [Claimant's coworker], Claimant had c[o]me up behind him and stated yes, I hit a mailbox." (Hr'g Tr. at 6, R.R. at 21A.) Round Manager stated that "[i]t's a driver-driver team so they're both responsible for the truck." (Hr'g Tr. at 6-7, R.R. at 21A-22A.) Round Manager testified that Claimant had notified him earlier on the day of the accident via Claimant's cellphone that the roads were slippery, that it was starting to snow, and that it was starting to stick on the roads. Round Manager indicated that he did not receive any resident complaints as a result of the accident.[6] (Hr'g Tr. at 7-8, R.R. at 22A-23A.) When asked if Claimant had any response or reaction upon learning of his termination, Round Manager stated "[w]ell . . . it wasn't a very fun event. I mean yes he was pretty sad." (Hr'g Tr. at 9, R.R. at 24A.)

Claimant testified that he was aware of Employer's rule, that he did not comply with the rule, and that he could be discharged for violating the rule. (Hr'g

---

[5] Claimant's mother, Linda Bell, testified as to Claimant's issue with filing biweekly claims due to the information being sent to the wrong address. (Hr'g Tr. at 10-11, R.R. at 25A-26A.)

[6] The UC Service Center apparently incorrectly found that "Employers [sic] customer called and reported the accident." (Notice of Determination, R.R. at 3A.)

3

Tr. at 9-10, 14, R.R. at 24A-25A, 29A.) However, Claimant explained that he did not attempt to contact his Employer immediately after the accident because he relied on the advice of his driving partner, who had been there for five or six years. Claimant then described the circumstances that he faced that day:

> I was soaking wet so I decided to drive. We're five stops from being done. The stop on the hill the truck, I pulled the e-brake. The truck slides. I hit the mailbox. There was no way I could get around it. I knock on the door and no one answers. So I asked the employe[e] that's been there longer than me . . . what should I do. Well we can just tell them when you get in. . . . So I'm thinking you've been there longer than me. . . . You're a veteran employee. . . . So we got in and we told. He was in front of me because I was driving the truck. I had to do the paperwork. He got to the front counter before I did but I admitted that I did do it.

(Hr'g Tr. at 9, R.R. at 24A.) Additionally, Claimant maintained throughout his testimony that he did not have a working phone to use at the time of the accident to contact his Employer. He stated, in pertinent part, that:

> [M]y phone was soaking wet from being on the back of the truck. It had been on my hip all day. So I just turned it off so I didn't mess that up. . . . [My coworker's phone] was dead too. He didn't charge his personal phone. Mine had got [sic] soaking wet. His was dead and our work phone was dead.

(Hr'g Tr. at 10, R.R. at 25A.) Tax Consultant asked Claimant "if this other employee told you that you had to call would you have turned on your phone . . . and made an attempt?" (Hr'g Tr. at 12, R.R. at 27A.) Claimant responded that if he absolutely had to call, he "would have knocked on any door possible to make sure [he] called." (Hr'g Tr. at 12, R.R. at 27A.) Claimant concluded his testimony by stating that he was willing to pay for the damaged mailbox and that he did not

4

know the situation was going to go as far as it did and result in his termination. (Hr'g Tr. at 15, R.R. at 30A.)

Based on the parties' testimony, the Referee made the following findings of fact:

1. The claimant was last employed as a driver by Waste Management and his last day of work was 11/28/14.

2. The claimant was aware of the employer's policy requiring that accidents or property damage be reported to the employer immediately.

3. On 11/26/1[4], while backing up the truck, the claimant knocked over a mailbox.

4. The claimant did not report the incident to the employer until he returned from the route.

5. The claimant questioned a more senior employee, who was not a supervisor, as to what they should do and the other employee said they should report it when they got back.

6. The claimant was discharged for violating the employer's policy.

(Referee Decision, Findings of Fact (FOF) ¶¶ 1-6.)

The Referee determined that Employer satisfied its burden of proving willful misconduct under Section 402(e) of the Law for violating Employer's policy. (Referee Decision at 1-2.) With respect to whether Claimant had good cause for his conduct, the Referee concluded:

The claimant was aware that the employer's policy required him to report an accident or property damage immediately. Rather than

5

follow policy, the claimant followed the advice of a coworker and did not report the incident until he returned to the office. The claimant has not established adequate justification for his failure to follow the employer's policy, and is therefore ineligible for benefits under Section 402(e) of the Law.

(Referee Decision at 2.)

Claimant appealed the Referee's Decision to the Board,[7] which adopted and incorporated the Referee's findings of fact and conclusions of law and affirmed the Referee's Decision finding Claimant ineligible for UC benefits pursuant to Section 402(e) of the Law. (Board Order.) Claimant now petitions this Court for review of the Board's Order.[8]

In support of his appeal, Claimant argues that the Board erred in affirming the Referee's finding that Claimant engaged in willful misconduct by violating Employer's work rule because he did not intentionally or deliberately violate that rule. In the alternative, Claimant argues that the Board erred, as a matter of law, in affirming the Referee's finding that Claimant did not have good cause for violating

---

[7] Claimant appealed to the Board, pro se, on May 11, 2015. (Petition for Appeal, R. Item 11.) On May 18, 2015, the Board was notified via letter that counsel had been retained to represent Claimant in his appeal to the Board. (Claimant's Counsel's Entry of Appearance and Request for Transcript of Testimony and Permission to File a Brief, R. Item 12.) On June 2, 2015, the Board gave permission to Claimant's counsel to file a brief on Claimant's behalf. (Board's Response to Claimant's Request for Transcript of Testimony and Permission to File a Brief, R. Item 13.) On June 16, 2015, Claimant's counsel filed a Brief in Support of Claimant's Unemployment Appeal. (Brief in Support of Claimant's Unemployment Appeal, R. Item 14.)

[8] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." Western and Southern Life Insurance Co. v. Unemployment Compensation Board of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006).

Employer's work rule. Lastly, Claimant argues that Employer unreasonably applied the work rule to Claimant.

Section 402(e) of the UC Law provides, in pertinent part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." 43 P.S. § 802(e). While the Law does not define "willful misconduct," our Court has defined it as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

Philadelphia Parking Authority v. Unemployment Compensation Board of Review, 1 A.3d 965, 968 (Pa. Cmwlth. 2010). "If the employer alleges willful misconduct because the claimant violated a work rule, the employer must prove both the existence of the rule[,] its violation," Caterpillar, Inc. v. Unemployment Compensation Board of Review, 703 A.2d 452, 456 (Pa. 1997), and "whether the rule or policy is reasonable in light of all the circumstances," Spirnak v. Unemployment Compensation Board of Review, 557 A.2d 451, 453 (Pa. Cmwlth. 1989). Reasonableness is determined by "consider[ing] whether application of the rule or policy under the circumstances is fair and just and appropriate to accomplish a legitimate interest of the employer." Spirnak, 557 A.2d at 453. A claimant must also be "made aware of the existence of the work rule." Bruce v. Unemployment Compensation Board of Review, 2 A.3d 667, 671 (Pa. Cmwlth. 2010).

7

If the employer satisfies its burden, the burden shifts to the employee to show that he or she had good cause for the conduct. McKeesport Hospital v. Unemployment Compensation Board of Review, 625 A.2d 112, 114 (Pa. Cmwlth. 1993). "A claimant has good cause if his or her actions are justifiable and reasonable under the circumstances." Docherty v. Unemployment Compensation Board of Review, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006). "Whether a claimant has good cause to violate an employer's rule or policy is a question of law subject to this [C]ourt's review and should be viewed in light of all of the attendant circumstances." Id. at 1208.

Claimant first argues that he did not intentionally or deliberately violate Employer's work rule such that it would be detrimental to Employer's interests. (Claimant's Br. at 10-12.) The Board, on the other hand, argues that its findings of fact are supported by substantial evidence of record because Claimant was aware, and admitted he was aware, of the rule, and he followed the rule before. (Board's Br. at 5.) Claimant does not dispute the existence of Employer's work rule, his awareness of the work rule, or that he technically did not comply with the work rule. (Hr'g Tr. at 9-10, 14, R.R. at 24A-25A.) Rather, Claimant argues that because his actions were not an *intentional or deliberate violation* of the work rule, they cannot be considered *willful* misconduct. Claimant acknowledged that he previously followed Employer's work rule by immediately reporting his involvement in another accident to his manager.[9] (Hr'g Tr. at 13, R.R. at 28A.)

---

[9] Claimant was involved in another accident where he backed up into another car. Claimant immediately reported the accident to his supervisor and received a written warning on June 2, 2014. (Counseling and Warning Document, R. Item 3.) Though, when asked if Claimant was discharged for "one incident alone or a series of incidents," Round Manager testified that

*(Continued…)*

8

The fact that Claimant knew what Employer's rule stated and did not strictly comply with it does not inescapably require a finding of willful misconduct. In his brief to this Court, Claimant argues that he did report the accident *immediately* upon his return to the office. (Claimant's Br. at 11-12, 14.) When asked what "immediate" means to the Employer, Round Manager testified that "[a]s soon as the incident happens[,] the driver is to get into a safe location, out of harms [sic] way, and [] report it to his route manager." (Hr'g Tr. at 5, R.R. at 20A.) Claimant did not testify that he reported the accident "immediately," or specifically argue that his reporting under these circumstances complied with the work rule, and the Board made no specific findings in this regard. While we thus question whether Claimant's decision not to call Employer under these circumstances would constitute a willful violation of Employer's rule, even if it did, we conclude that Claimant established good cause for not calling.

As previously noted, "[w]hether a claimant has good cause to violate an employer's rule or policy is a question of law subject to this [C]ourt's review and should be viewed in light of all of the attendant circumstances." Docherty, 898 A.2d at 1208. Therefore, we review Claimant's contention that he had good cause under this standard. Here, snow was falling and the roads were slippery. Claimant "did not attempt to hide or otherwise evade responsibility for the accident," he attempted to notify the owner of the mailbox, who was not home, he finished his route and returned to the office and immediately informed his supervisor. (Claimant's Br. at 14.) Claimant asked the advice of the other, more senior, driver

---

Claimant's discharge was based upon "[j]ust th[is] one incident alone." (Hr'g Tr. at 6, R.R. at 21A.)

9

working with him who advised him that they could notify their supervisor when they returned to the office. (Claimant's Br. at 10-11.) Claimant further contends that he was "not in a position to immediately contact his supervisor," as his and the other driver's personal cell phones, as well as their work phone, were inoperable. (Claimant's Br. at 14.) Thus, Claimant contends that even though he did not comply with Employer's work rule, his behavior was reasonable and justifiable under the circumstances.

The Board contends that Claimant unjustifiably violated Employer's work rule because he relied on the "misguided" advice of his coworker in not complying with the rule, relying on Rothstein v. Unemployment Compensation Board of Review, 114 A.3d 6 (Pa. Cmwlth. 2015). The Board also contends that Claimant waived the inoperable cell phone argument by not including it in his brief to the Board, and, even if this argument was not waived, his alleged cell phone problem was not the real reason Claimant did not call his supervisor. Instead, the Board argues that Claimant did not call because he relied on his coworker's advice, as evidenced by Claimant's testimony:

> So I thought he would not give me the wrong information that I couldn't tell when I got there. If that's the case I would have stayed right there and made sure I got [sic] contact with these guys but he told me it was okay. I'm thinking all right. I guess it's okay.

(Hr'g Tr. at 9-10, R.R. at 24A.)

We have reviewed Claimant's brief to the Board to determine whether Claimant waived his argument that his inoperable phone affected his ability to call

10

Employer, and conclude that he did not. In the Statement of Relevant Facts in his brief to the Board, he stated "[Claimant] also presented undisputed testimony that [his coworker's] cellphone and their work phone were both dead, and he had turned his phone off and placed it in his bag because it was soaking wet from the snow." (Brief in Support of Claimant's Unemployment Appeal at 3, R. Item 14.) His Legal Argument referenced that he "had good cause for violating the rule under the circumstances he was under," and asserted that his "means of communicating with Employer w[ere] substantially limited." (Brief in Support of Claimant's Unemployment Appeal at 6, 12.) We find that Claimant sufficiently raised the inoperable phone issue to the Board on appeal.

The Board argues that Claimant unjustifiably relied on the advice of his coworker, as did the claimant in Rothstein. In Rothstein, a Verizon employee, who was required to enter customers' homes, was found not to have good cause for failing to report his arrest for stalking, harassment, and indecent exposure as required by his employer's rules. Rothstein, 114 A.3d at 8. The employee did not report his arrest to the employer, on the advice of his union representative not to tell anyone about his arrest. Id. at 8. The Court concluded that "the policy put the responsibility to report relevant off-the-job misconduct on the individual employee." Id. at 11.

Claimant, instead, draws the Court's attention to Williams v. Unemployment Compensation Board of Review (Pa. Cmwlth., No. 289 C.D. 2013, filed August 7,

11

2013),[10] a case with similar facts to the instant matter. In <u>Williams</u>, a postal worker struck a customer's motorcycle with Employer's vehicle, was suspended pending an investigation of the accident, was then discharged for not reporting the accident to his supervisor immediately, against Employer's policy, and was found ineligible for benefits. <u>Id.</u>, slip op. at 1. The claimant did not dispute the existence of the policy, his awareness, or that he also technically did not comply with the policy. <u>Id.</u>, slip op. at 2. The Court held that the unemployment claimant acted justifiably under the circumstances because: he did not hide his involvement in the accident; he searched for and notified the customer, who called the post office about the accident; he tried to call his supervisor; he finished his route because he was running late after looking for the customer; and he went to his supervisor's office after he returned to the post office to report the accident, but was told his supervisor had already heard about the accident from the customer. <u>Id.</u>, slip op. at 2. Claimant asserts that his actions, like the actions in <u>Williams</u>, should be found justifiable.

We find that the circumstances here are more similar to <u>Williams</u> than to <u>Rothstein</u>. As in <u>Williams</u>, the Claimant here did not try to hide the fact that he was involved in the accident. To the contrary, as in <u>Williams</u>, Claimant attempted to notify the resident, as he testified that he "knocked on the [resident's] door and no one [was] there." (Hr'g Tr. at 10, R.R. at 25A.) Although the claimant in <u>Williams</u> unsuccessfully attempted to notify his supervisor after the accident

---

[10] Pursuant to Section 414 of this Court's Internal Operating Procedures, an unreported panel decision issued by this Court after January 15, 2008 may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a).

Claimant here had substantially limited means of communicating with his supervisor. Given the bad weather and phone situation, Claimant relied on his more senior coworker's advice that they could report the accident to their supervisor upon their return. Just as in Williams, Claimant finished his route because he only had five stops left, quickly completed the paperwork required of him upon his return, and immediately informed Employer about the accident upon his return to the office. While the customer in Williams called the employer to report the accident, here, the resident did not call Employer to report the accident. We conclude that, "in light of all of the attendant circumstances," Claimant's actions in completing his work responsibilities actually furthered the interests of Employer just as the claimant's actions in Williams, and unlike the claimant's actions in Rothstein. Docherty, 898 A.2d 1208. Unlike in this case and Williams, where the claimants reported to the employer immediately upon their return to the office, the claimant in Rothstein, did not report his arrest, or subsequent conviction, to his supervisor at all, and continued to enter customers' homes while having been arrested for crimes which were inimical to the best interests of his employer. The claimant's actions in Rothstein, potentially placed "customer[s'] safety, comfort and confidence in Verizon services" at risk, unlike the Claimant's actions here. Rothstein, 114 A.3d at 10.

Under these circumstances, as in Williams, we conclude that the Board erred, as a matter of law, in determining that Claimant did not have good cause for not complying with Employer's work rule. Pursuant to the above principles, we consider the reasonableness of Claimant's conduct "in light of all of the attendant circumstances." (Hr'g Tr. at 6, R.R. at 21A); Docherty, 898 A.2d at 1208-09.

13

Doing so, we find that Claimant had good cause for his noncompliance with Employer's work rule and the Board erred in finding him ineligible for UC benefits.

For the foregoing reasons, the Board's Order is reversed.

_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Shannon Bell, :
:
                Petitioner :
:
        v. :    No. 1324 C.D. 2015
:
Unemployment Compensation :
Board of Review, :
:
          Respondent :

# **O R D E R**

    **NOW**, April 26, 2016, the Order of the Unemployment Compensation Board of Review entered in the above-captioned matter is **REVERSED**.

_____
    **RENÉE COHN JUBELIRER, Judge**