# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lisa Ryckman, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1478 C.D. 2018 |
| | : | Submitted: May 17, 2019 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED:  July 31, 2019**

Lisa Ryckman (Claimant), representing herself, petitions for review from an order of the Unemployment Compensation Board of Review (Board) denying her unemployment compensation (UC) benefits under Section 402(e) of the UC Law (Law).[1]  Claimant argues the Board erred in finding she lacked good cause for violating a work directive.  Upon review, we affirm.

Claimant worked full-time for Harriet Carter Gifts (Employer) as an email marketing specialist from September 2015 until May 2018.   In February 2018, Claimant took maternity leave.  While on leave, Claimant worked remotely for Employer as needed.  Referee's Dec., 7/19/18, Finding of Fact (F.F.) No. 3.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e) (relating to willful misconduct).

Before returning to work, Claimant requested a position change and the option to work remotely as an independent contractor. F.F. No. 4. Employer required Claimant to quit her position as a full-time employee before she could be considered for this new position. Id. Claimant was not comfortable with quitting for only the possibility of working as an independent contractor. F.F. No. 5. When Claimant did not pursue the contractor position, Employer withdrew the offer. Id.

When her maternity leave ended, Claimant returned to the office on April 30, 2018. F.F. No. 6. Due to child care issues, she took some time off during her first week. F.F. No. 7. On May 4, Employer offered Claimant an accommodation of working 20 hours a week during the weeks of May 7 and May 14 to allow her to resolve her child care issues. F.F. No. 8. However, Claimant worked less than the agreed-upon hours. F.F. No. 9. On May 15, Employer notified Claimant her accommodation term would end on May 18, requiring her to resume full-time employment on May 21. F.F. No. 10.

On May 21, Claimant worked only a half day, leaving early without notifying her supervisors. F.F. No. 11. Employer discharged Claimant for a "clear violation of [its] directive" to resume full-time employment on that date. Certified Record (C.R.), Item No. 3, at 4;[2] see F.F. Nos. 12, 13.

Claimant filed for UC benefits, which the local service center denied under Section 402(e) of the Law, 43 P.S. §802(e). Claimant appealed.

---

[2] Because the certified record was filed electronically and was not paginated, the page numbers referenced in this opinion reflect electronic pagination.

A referee held a hearing. At the hearing, Claimant testified on her own behalf and Employer's human resources manager (HR Manager) and vice president of marketing (Marketing VP) testified on behalf of Employer.

HR Manager testified that Employer initially considered the possibility of Claimant working as an independent contractor after her maternity leave, but decided this was not feasible after consulting its attorneys. HR Manager confirmed Employer intended for Claimant to resume full-time employment after her maternity leave. Although Employer was under no obligation to do so, it provided Claimant with a flexible schedule upon her return to work and, for two weeks, allowed her to work part-time and use her personal time off (PTO). HR Manager emphasized Employer notified Claimant numerous times that her failure to resume full-time employment by May 21 would result in her discharge from employment.

Marketing VP testified that Employer required Claimant to report her arrival and departure times during the two-week accommodation. She recalled, however, that Claimant did not always report her hours, and specifically, that Claimant failed to notify her before leaving early on May 21.

In response, Claimant testified that her original child care arrangement with her mother fell through approximately one month before she returned to work. Claimant knew, as early as February 1, 2018, when her child was born, that her return date to full-time employment was April 30. Claimant testified she reached an agreement with Employer to work as an independent contractor. However,

Employer revoked the offer because Claimant was not comfortable resigning without a written agreement in place.

Claimant explained her efforts to cooperate with Employer during her maternity leave, such as working remotely and attending in-office meetings. Claimant contacted numerous daycares over the course of several months, but she had trouble finding infant daycare facilities. Each daycare had a waiting list, some of which required enrollment fees of $150 to $200. She strategized by enrolling her child in two daycares (one of which had free enrollment) because she could not afford multiple enrollment fees.

While on leave, Claimant continually updated Employer about her efforts to find child care. Claimant notified Employer she was temporarily unable to resume full-time employment post-maternity leave because she had not yet secured child care. Claimant emphasized the temporary nature of these circumstances, and had Employer "waited another, you know, seven days or so, I would've been fine …." Referee's Hr'g, Notes of Testimony (N.T.), 7/19/18, at 16.[3] Claimant also insisted that she did not abandon her job when she left early on May 21; rather, she notified Marketing VP of her early departure.

The referee found that despite Employer's accommodations, Claimant "did not take concrete steps to resolve her child care issues" within Employer's given timeline. Referee's Dec., 07/19/18, at 3. The referee concluded Claimant did

---

[3] Although the date is unclear, the record reflects Claimant was approved by the daycare for admission after Employer terminated her employment. Certified Record, Item No. 4, at 1.

4

not show good cause for violating Employer's reasonable directive and was ineligible for UC benefits under Section 402(e) of the Law.[4] Claimant appealed to the Board.

Aside from amending three findings, the Board affirmed the referee's decision and adopted his findings. The Board did not credit Claimant's testimony regarding her early departure on May 21, and it resolved all conflicts in testimony in Employer's favor. Claimant now petitions for review.[5]

On appeal,[6] Claimant argues the Board's findings are not supported by substantial evidence. She contends the Board erred in concluding she committed willful misconduct when she did not resume full-time employment on May 21. Claimant also maintains she was doing her best to find suitable child care by actively searching for daycare, but Employer failed to appreciate the challenge of securing affordable infant daycare.

In UC proceedings, the Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. Grieb v. Unemployment Comp. Bd. of Review, 827 A.2d 422 (Pa. 2003). In making a substantial evidence determination, this Court must view the record in a light most

---

[4] The referee also found Claimant was able and available for work under Section 401(d)(1) the Law, 43 P.S. §801(d)(1). Claimant does not challenge that part of the decision.

[5] The Board also rejected an offer of additional evidence that Claimant neglected to present to the referee. Claimant then requested reconsideration, which the Board denied.

[6] Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Oliver v. Unemployment Comp. Bd. of Review, 5 A.3d 432 (Pa. Cmwlth. 2010) (en banc).

favorable to the party that prevailed before the Board by allowing that party the benefit of all reasonable inferences that may be drawn from the evidence. Tapco, Inc. v. Unemployment Comp. Bd. of Review, 650 A.2d 1106 (Pa. Cmwlth. 2004).

However, all of Claimant's substantial evidence arguments are waived on appeal for failure to raise the issue below or to properly present it to this Court.[7] Regardless, Claimant lacks evidence supporting her contentions.

First, Claimant contends she stopped looking for child care after Employer agreed to hire her as an independent contractor and only resumed her search when Employer rescinded the offer. Essentially, Claimant argues Employer interfered with her time and ability to find child care.

Upon careful review, there is only evidence that Claimant and Employer discussed the possibility of Claimant working as an independent contractor – there was no agreement. Claimant was not entitled to stop her child care search based on these discussions. Moreover, Claimant cites no factual details in evidence, such as the duration of time between Employer's offer and its revocation, to show Employer's conduct interfered with her search for child care.

---

[7] Claimant also raised arguments concerning Employer's handbook policies on absences and personal time off, and asserted she was entitled to work remotely because her position was web-based. Although Claimant raised these issues below, she did not argue them to this Court. As such, they are waived. Jimoh v. Unemployment Comp. Bd. of Review, 902 A.2d 608 (Pa. Cmwlth. 2006).

Claimant also advances a disparate treatment argument. She claims Employer did not hire temporary staff to fill-in during her maternity leave as it previously did with other employees. Because of this, Claimant maintains she felt pressure to work during her maternity leave. However, as this argument was not comprised within Claimant's petition for review or in her statement of questions involved in her brief, it is waived on appeal. See Pa. R.A.P. 1513.

Notwithstanding waiver,[8] our review of the record reveals Claimant did not present any evidence to show that she and the other employees conducted similar work or were otherwise similarly situated. Remcon Plastics, Inc. v. Unemployment Comp. Bd. of Review, 651 A.2d 671 (Pa. Cmwlth. 1994) (claimant must show similarly situated people were treated differently based on improper criteria). While Claimant offered to help Employer during her maternity leave, Employer never required her to do so.[9]

Claimant also argues the Board erred in concluding her actions constituted willful misconduct. The issue of whether a claimant's actions

---

[8] We will preclude a finding of waiver if, based on the certified record, we are able to address an issue "not within the issues stated in the petition for review but included in the statement of questions involved and argued in a brief." Pa. R.A.P. 1513, Official Note (2014).

[9] Additionally, Claimant challenges the Board's credibility determinations. The Board did not credit Claimant's testimony that she notified Marketing VP before leaving early on May 21, 2018. We are bound by the Board's credibility determinations on appeal. Peak v. Unemployment Comp. Bd. of Review, 501 A.2d 1383 (Pa. 1985). Moreover, Claimant's failure to provide *notice* that she was leaving early was not the violation underlying the misconduct determination. The Board found that Claimant violated the directive to resume full-time employment on that date, not that she violated a directive requiring she report early departures. Accordingly, Claimant's failure to provide notice for leaving early on May 21 was not relevant.

constitute willful misconduct is reviewable as a question of law. Comp v. Unemployment Comp. Bd. of Review, 478 A.2d 503 (Pa. Cmwlth. 1984).

Under Section 402(e) of the Law, 43 P.S. §802(e), a claimant is ineligible for UC benefits when an employer discharges her for willful misconduct. Willful misconduct is defined in our caselaw as: (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect; or (d) negligence indicating an intentional or substantial disregard of an employer's interest or an employee's duties or obligations. Klampfer v. Unemployment Comp. Bd. of Review, 182 A.3d 495 (Pa. Cmwlth. 2018).

A single refusal to follow an employer's directive can constitute willful misconduct even when the claimant has a good work record. Affalter v. Unemployment Comp. Bd. of Review, 397 A.2d 863 (Pa. Cmwlth. 1979). The Court must consider both the reasonableness of the employer's request and the claimant's reason for noncompliance. Pryor v. Unemployment Comp. Bd. of Review, 475 A.2d 1350 (Pa. Cmwlth. 1985). Once a refusal is established, the claimant has the burden of proving good cause by showing her actions were justifiable and reasonable under the circumstances. Docherty v. Unemployment Comp. Bd. of Review, 898 A.2d 1205 (Pa. Cmwlth. 2006).

On May 14, 2018, Employer advised Claimant by email that she failed to abide by its accommodation of working 20 hours a week for 2 weeks. Employer told Claimant that "[a]s of Monday, May 21st, we expect you to be

8

working 40 hours per week in our office. If you are unable to do so, we will have no choice but to terminate your employment." C.R., Item No. 3, at 6. Employer emphasized, "[a]s we have discussed numerous times, your job is a 40[-]hour per week full-time job, and despite your desire that it be otherwise, cannot be performed from home or on a less than full-time basis." Id.

Claimant responded on May 15 by stating that she did not agree to Employer's full time schedule as she had not yet secured child care. Employer replied the same day: "[u]nfortunately, it seems to me that we have been miscommunicating over the past few weeks." Id. Employer continued, "I want to make absolutely clear that you are to return to work next Monday May 21 on a full-time (40 hours/week) basis working in the office." Id. A failure to do so "would result in the termination of your employment …." Id.

It is undisputed that Employer directed Claimant to resume full-time employment on May 21; nevertheless, Claimant left the office early. Thus, we must determine whether Employer's directive was reasonable.

As early as February 1, 2018, Claimant knew of her April 30 return date to full-time employment. Claimant learned her mother could no longer provide child care approximately one month before her scheduled return date.[10] Upon her

---

[10] The hearing transcript reflects the following exchange between Claimant and the referee:

> R[:] Right. So, my point is, I want to -- I need to know at what point you kind of knew that your mom could not baby-sit?

**(Footnote continued on next page…)**

9

return to work, Employer allowed Claimant to work part-time for two weeks in order to resolve her child care issues. Employer afforded Claimant a final warning, notifying Claimant, at the latest by May 15, that a failure to resume full-time employment by May 21 would result in termination of her employment. This new return date of May 21 was three weeks after Claimant's scheduled return date (April 30), and approximately seven weeks after she knew her mother would not babysit. Therefore, in light of Employer's accommodations and clear warnings, its directive was reasonable.

The burden then shifted to Claimant to establish good cause for her noncompliance with Employer's directive. Pryor. Domestic responsibilities, such as the care of small children, may constitute good cause. Jurkiewicz v. Unemployment Comp. Bd. of Review, 477 A.2d 583 (Pa. Cmwlth. 1984). However, the claimant must show reasonable efforts were made to obtain child care "considering the time available to make the search." Wolford v. Unemployment Comp. Bd. of Review, 384 A.2d 1035, 1037 (Pa. Cmwlth. 1978). We also consider "the age of child, support needs, and attempts to consult with friends, relatives, and

_____

**(continued…)**

> C[:] A month prior.
>
> R[:] A month prior.
>
> C[:] Yes.
>
> R[:] So, you had one month to figure [out] the [child care] issue?
>
> C[:] Yes.

Referee's Hr'g, Notes of Testimony, 7/19/18, at 15.

10

day-care centers." <u>Luckenbaugh v. Unemployment Comp. Bd. of Review</u> (Pa. Cmwlth., No. 1261 C.D. 2011, filed April 19, 2012), slip op. at 8, 2012 WL 8679675, at *3 (unreported) (relating to good cause in work refusal context).[11]

This Court acknowledges Claimant's undisputed testimony of her efforts to obtain child care, such as enlisting her mother's help and enrolling her child in two daycares. Indeed, there is record evidence of Claimant's efforts to find child care prior to her April 30 return date. However, there is no evidence Claimant made any efforts to find immediate, short-term child care after the threat of discharge was made clear.

Claimant knew on May 15, by written threat of discharge, that a failure to resume full-time employment by May 21 would result in the termination of her employment. In other words, Claimant needed to find an immediate child care alternative from May 21 until late May or early June, the anticipated date of her child's daycare acceptance, to preserve her employment. This afforded her at least six days, to find a temporary child care solution to comply with Employer's directive. She did not do so.

This Court does not question Claimant's difficulty in securing affordable child care while navigating the infant daycare process. However, Employer's termination of her employment, although unfortunate, should not have come as a surprise to Claimant given Employer's warnings.

---

[11] Section 414 of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414.

11

.

Claimant bore the burden of proving she took reasonable steps to find child care in the time available to her. Wolford. Claimant does not maintain she contacted a babysitter or additional family and friends while awaiting finalization of the daycare arrangements. Claimant testified her mother could not provide long-term child care and her husband traveled significantly for work; however, she did not present evidence that neither her mother nor her husband could offer short-term child care. Indeed, Claimant submitted no evidence of any efforts she took to secure child care after Employer's May 15 threat of discharge. As such, Claimant failed to establish good cause for her actions.

For the foregoing reasons, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lisa Ryckman,              :
           Petitioner    :
                       :
        v.           :   No. 1478 C.D. 2018
                       :
Unemployment Compensation :
Board of Review,          :
           Respondent  :

## O R D E R

**AND NOW**, this 31st day of July 2019, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

_____
ROBERT SIMPSON, Judge