IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Martin O. Roethlein,           :
              Petitioner     :
                              :
      v.                  :   No.  1102 C.D. 2020
                              :   Submitted:  October 21, 2022
Unemployment Compensation   :
Board of Review,           :
             Respondent   :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                     FILED:  February 24, 2023

Martin O. Roethlein (Claimant), pro se, petitions for review of the October 2, 2020 order of the Unemployment Compensation Board of Review (Board), which reversed the referee's decision and concluded he was ineligible for unemployment compensation (UC) benefits due to willful misconduct under Section 402(e) of the Unemployment Compensation Law.[1]  After careful review, we affirm.

## I. Background and Procedural History

On February 27, 2020, the Duquesne UC Service Center issued a notice of determination, concluding that Claimant was ineligible for UC benefits due to willful

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

misconduct. Certified Record (C.R.), Item No. 4, Notice of Determination, 2/27/20, at 1. The notice indicated Henne, Inc. (Employer) discharged Claimant for violating its attendance policy. *Id.* The notice indicated Claimant was aware of the policy, Employer had previously warned Claimant about the policy, and Claimant admitted to violating the policy. *Id.* In addition, Claimant did not show good cause for violating the policy. *Id.*

Claimant appealed to a UC referee, who held a telephone hearing on April 20, 2020. At the time scheduled for the hearing, the referee successfully placed phone calls to Claimant and his representative, but the call to Employer went to voicemail. C.R., Item No. 9, Notes of Testimony (N.T.), 4/20/20, at 1-2. As a result, Claimant was the only witness to testify during the hearing. Claimant testified he worked for Employer as a jeweler beginning on October 7, 2019.[2] *Id.* at 5. Claimant testified he had to stop working after December 23, 2019, however, due to sciatica. *Id.* at 6-7. He described his medical treatment for this condition, including treatment at a pain management clinic and trips to the hospital. *Id.* at 7. Claimant insisted he was a reliable employee who was never late or missed work until he began suffering from sciatica.[3] *Id.* at 6-7. On April 21, 2020, the referee issued a decision reversing the UC Service Center's notice of determination. C.R., Item No. 10, Referee's Decision, 4/21/20, at 3 (unpaginated). The referee reasoned that Employer did not participate in the hearing, despite receiving notice, and that there was no competent evidence in the record to demonstrate willful misconduct. *Id.* at 2.

---

[2] Claimant's employment was part time. C.R., Item No. 2, Claimant Questionnaire, 2/10/20.

[3] As discussed in greater detail below, Employer terminated Claimant's employment on January 29, 2020. C.R., Item No. 3, Employer Questionnaire, 2/10/20.

Employer filed a petition for appeal to the Board, in which it requested a new hearing. Employer averred that its representative was waiting for the referee's phone call on April 20, 2020, but that she did not receive a call for unknown reasons. C.R., Item No. 11, Employer's Petition for Appeal with Attachments, 4/30/20, at 84, 110.[4] The Board issued an order on June 18, 2020, remanding for another hearing. C.R., Item No. 14, Board Hearing Order, 6/18/20, at 1 (unpaginated). The order explained that the purpose of the remand was to allow Employer to present evidence addressing its lack of participation on April 20, 2020. *Id.* Moreover, the order explained that the parties could present additional evidence on the merits of the case, but that the Board would not consider the evidence unless it found Employer had proper cause for its non-participation. *Id.*

The referee held a second telephone hearing on July 9, 2020. This time, the referee successfully placed phone calls to Claimant and his representative, as well as Employer's controller, Suzanne Bindseil (Bindseil). The referee heard testimony from Bindseil regarding Employer's failure to participate in the hearing on April 20, 2020, after which Bindseil and Claimant presented testimony addressing the merits of Claimant's request for UC benefits.

Regarding Employer's failure to participate in the hearing on April 20, 2020, Bindseil testified the referee's phone call "did not come through." C.R., Item No. 16, N.T., 7/9/20, at 4. Bindseil explained that she made efforts to contact the referee after she did not receive a phone call, which included sending email and making two calls herself, which proved unsuccessful. *Id.* Regarding her second attempt to call the referee, she testified: "I called the office again. I spoke with a woman who said that you, [referee], were in the office, that she would pass the message along to you.

---

[4] Employer's petition for appeal and its attachments lack pagination. For ease of review, when citing to Employer's petition for appeal, we use the overall pagination of the certified record.

I heard nothing back after that." *Id.* Bindseil testified April 20, 2020, was the first day she was able to return to Employer's store after it closed temporarily due to the COVID-19 pandemic. *Id.* She explained that Employer was "moving" its phone system because it was "forwarding to another phone," and she "was assured by the person who was doing it that it was all ready to go." *Id.* Bindseil nonetheless agreed on cross-examination that Employer's phones may not have been set up correctly, saying: "That was probably the case. I do not know. I did not set the phones up."[5] *Id.* at 6.

Regarding the merits of the case, the parties presented only brief testimony. Bindseil testified that Employer discharged Claimant because he failed to return to work and did not inform Employer when he would be able to return to work or when his doctors cleared him to return to work. *Id.* at 7. In addition, Claimant failed to inform Employer what accommodations he might need. *Id.* Claimant countered that he was unable to provide Employer with a date when he could return to work because his doctor's office "didn't have a date." *Id.* at 9. When Bindseil pressed Claimant on cross-examination why he could not obtain a return date at a doctor's appointment on January 27, 2020, Claimant insisted that he told Bindseil he "would be back on the 28th, whether [he was] in extreme pain or not." *Id.* at 10.

Because the parties' testimony was so brief, the most important evidence on the merits was Employer's petition for appeal from the April 21, 2020 decision,

---

[5] Based on his cross-examination of Bindseil, Claimant's representative lodged an "objection to strike any further testimony or evidence from the [e]mployer." C.R., Item No. 16, N.T., 7/9/20, at 6. Claimant's representative expressed his understanding, however, that "the Board probably has to rule on that," and the referee explained that he would "go over" the objection and hear further testimony. *Id.* The Board did not specifically rule on the request to strike but, as we summarize below, concluded Employer had good cause for failing to participate in the April 20, 2020 hearing, and considered evidence from both the April 20, 2020 and July 9, 2020 hearings when reaching its decision.

4

which the referee entered into the record without objection. *See* C.R., Item No. 16, N.T., 7/9/20, at 4; C.R., Item No. 11, Employer's Petition for Appeal with Attachments, 4/30/20. Employer attached documentation to its petition detailing Claimant's unexcused absences, including a letter terminating Claimant's employment, emails between Employer and Claimant, medical documents related to Claimant's absences, Employer's company policy warning that excessive absences or absences without notice could result in termination, and a spreadsheet compiling Employer's communications with Claimant from December 23, 2019, to January 29, 2020.

In summary, Employer's attachments indicate that Claimant's last day at work was on December 23, 2019. C.R., Item No. 11, Employer's Petition for Appeal with Attachments, 4/30/20, at 100, 109, 126, 135. Claimant informed Employer he would "[p]robably" be out sick on December 27 and 28, 2019, and Claimant did not report for work on those days. *Id.* at 98, 109, 124, 135. Employer then sent Claimant an email on December 28, 2019, asking if he would be "unable to come in" due to his illness and a voicemail asking him to return the call. *Id.* Claimant did not reply and was absent without notice on December 30, 2019, his next scheduled workday. *Id.* at 109, 135. On January 2, 2020, Claimant emailed and called Employer to explain he had a doctor's appointment and would not be in for work on January 3, 2020. *Id.* Claimant missed eight scheduled workdays without notice after January 3, 2020, which occurred between January 4, 2020, and January 20, 2020. *Id.* During that time, Employer sent Claimant two emails and left a voicemail, inquiring about his availability and again asking for a return call. *Id.* at 99-100, 109, 125-26, 135.

On January 21, 2020, Employer sent Claimant an email warning that he must respond by the afternoon of January 22, 2020, or that Employer would "consider it

5

job abandonment." *Id.* at 100, 109, 126, 135. Claimant timely replied, explaining he was in the hospital and was "[n]ot sure yet" when he could return to work. *Id.* at 101, 109, 127, 135. He also apologized that he had not "been in touch for a[]while." *Id.* Employer requested that Claimant provide, by January 24, 2020, "documentation outlining that you have been seen and when you will be able to return to work (and if there were an [sic] limitations while working) with contact information for the office included." *Id.* Claimant sent Employer two emails on January 24, 2020, in which he forwarded medical documentation[6] and indicated he had an appointment on January 27, 2020, at which he would receive any work limitations. *Id.* at 103-04, 109, 129-30, 135. On January 27, 2020, Claimant sent an email saying he "[g]ot a shot today so I will be there Friday with or without pain." *Id.* at 105, 109, 131, 135. This was the last communication between the parties before Employer sent a letter to Claimant terminating his employment, dated January 29, 2020. *Id.* at 95, 121.

On October 2, 2020, the Board issued the order on appeal, in which it reversed the referee and deemed Claimant ineligible for UC benefits. Regarding Employer's failure to participate in the April 20, 2020 hearing, the Board found that the hearing "occurred on the first day that . . . [E]mployer reopened following closure related to COVID-19 and its phone system malfunctioned." C.R., Item No. 17, Board's Order, 10/2/20, at 2. Thus, the Board concluded that Employer had proper cause for failing to participate in the hearing and explained that it would base its decision on evidence presented at both the April 20, 2020 and July 9, 2020 hearings.

---

[6] Although Employer did not attach Claimant's medical documentation to its petition for appeal, Claimant attached it to his Claimant Questionnaire. The documentation is not detailed but implies that Claimant was admitted to a hospital from January 16, 2020, to January 24, 2020, for "back pain." C.R., Item No. 2, Claimant Questionnaire, 2/10/20, at 7 (unpaginated).

6

Regarding the merits of Claimant's request for UC benefits, the Board found that Claimant suffered sciatica and obtained medical treatment. *Id.* at 1. In addition, although Claimant informed Employer he would be out sick on December 27 and 28, 2019, the Board found that he did not call off from December 29, 2019, through January 21, 2020.[7] *Id.* The Board explained that Claimant did not have good cause for failing to call off for those days, because he "offered no credible explanation for why his condition prevented him from reporting his absences to the employer over approximately a three[-]week period." *Id.* at 3. Furthermore, the Board observed that Employer and Claimant exchanged emails on January 21 and 22, 2020, in which Employer asked Claimant to provide documentation indicating when he could return to work and describing any work limitations. *Id.* at 2. Following an appointment on January 27, 2020, Claimant informed Employer he had seen a doctor and planned to return to work, but he did not indicate his doctor released him to return to work or whether the doctor imposed any work limitations. *Id.* Based on these factors, the Board concluded that Claimant engaged in willful misconduct under Section 402(e). *Id.*

Claimant, now acting pro se, filed a petition for review in this Court. Claimant challenges the Board's conclusions that (1) Employer had good cause for its failure

---

[7] The Board's findings contain a slight error, as they do not acknowledge that Claimant called off work for January 3, 2020. Employer's documentation indicates Claimant called off work for that day, and there was no basis for the Board to reject this admission on the part of Employer and find otherwise. *See* C.R., Item No. 11, Employer's Petition for Appeal with Attachments, 4/30/20, at 109, 135. Nonetheless, January 3, 2020, was only one absence from work among many, and the Board's erroneous finding of fact is not necessary to sustain its decision. As a result, the Board's error was harmless. *See Hauck v. Unemployment Comp. Bd. of Rev.*, 271 A.3d 961, 971 (Pa. Cmwlth. 2022) (collecting cases).

to participate in the April 20, 2020 hearing, and (2) he committed willful misconduct under Section 402(e).[8]

## II. Discussion

This Court reviews orders granting or denying UC benefits for violations of the petitioner's constitutional rights, violations of agency practice and procedure, or other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the decision. *Id.* The Board is the ultimate factfinder in these cases and entitled to assess witness credibility and weight of the evidence. *Hubbard v. Unemployment Comp. Bd. of Rev.*, 252 A.3d 1181, 1185 n.2 (Pa. Cmwlth. 2021) (citing *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1388 (Pa. 1985)). Thus, we view the evidence in a light most favorable to the party that prevailed before the Board, drawing all logical and reasonable inferences to determine if substantial evidence exists. *Sweeney v. Unemployment Comp. Bd. of Rev.*, 74 A.3d 1175, 1177 n.1 (Pa. Cmwlth. 2013) (citing *Taylor v. Unemployment Comp. Bd. of Rev.*, 378 A.2d 829, 831 (Pa. 1977)). If substantial evidence supports the Board's findings, they are binding on appeal. *Allen v. Unemployment Comp. Bd.*

---

[8] Claimant lists five separate questions in his statement of questions involved, but presents each question simultaneously in the argument section of his brief. Moreover, Claimant does not include any citations to legal authority in his argument section. The only legal citations in Claimant's brief appear in the statement of jurisdiction and table of citations. Pennsylvania's Rules of Appellate Procedure direct that a petitioner divide the argument section of his or her brief "into as many parts as there are questions to be argued" and "have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (citations omitted). Nonetheless, because we can discern the issues Claimant wishes to raise, we will liberally construe his pro se brief and reach the merits of this appeal. *See Smithley v. Unemployment Comp. Bd. of Rev.*, 8 A.3d 1027, 1029 n.6 (Pa. Cmwlth. 2010) (citing *Robinson v. Schellenberg*, 729 A.2d 122, 124 (Pa. Cmwlth. 1999)).

*of Rev.*, 189 A.3d 1128, 1133 (Pa. Cmwlth. 2018) (citing *Kelly v. Unemployment Comp. Bd. of Rev.*, 776 A.2d 331, 336 (Pa. Cmwlth. 2001)).

## A. Proper Cause for Employer's Failure to Appear

Initially, Claimant challenges the Board's determination that Employer had proper cause for its failure to participate in the initial hearing on April 20, 2020. Claimant argues this determination was without evidentiary support, since Bindseil did not testify Employer's phones were "malfunctioning." Claimant's Br. at 7-10. He also argues the Board should have granted his representative's request to strike evidence from Employer regarding the merits of the case, since Employer did not have proper cause. *Id.* at 8. Claimant's argument relates to Section 101.24(a) of the Board's regulations, 34 Pa. Code § 101.24(a), which directs that, if a party who failed to attend a hearing "subsequently gives written notice, which is received by the tribunal[9] prior to the release of a decision, and it is determined by the tribunal that his failure to attend the hearing was for reasons which constitute 'proper cause,' the case shall be reopened."

Although Claimant is correct that Bindseil did not testify Employer's phones were "malfunctioning" or "malfunctioned" on April 20, 2020, we are satisfied that the Board used this terminology merely as an informal way of saying the phones did not receive the referee's call due to unanticipated technical problems. Significantly, this Court has cautioned the Board against faulting parties for missed calls in similar circumstances. In *Walthour v. Unemployment Compensation Board of Review*, 276 A.3d 837, 840 (Pa. Cmwlth. 2022), a UC referee called a claimant for a scheduled hearing but received a message indicating the claimant's phone did "not accept calls from numbers with caller ID blocked." The Board found that the claimant lacked

---

[9] The regulations define "tribunal" as "[t]he Board or one of its referees." 34 Pa. Code § 101.2.

proper cause for her unavailability. *Id.* at 840-41. We remanded for a new hearing, rejecting the Board's position "that parties are responsible for their own technology and in charge of their phone and incoming calls." *Id.* at 845 (citing *O'Leary v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 984 C.D. 2020, filed Oct. 27, 2021) (unreported)). In addition, we emphasized that the claimant was waiting for the referee's call at the time of the hearing and tried to contact the referee when she did not receive a call. *Id.*

Similarly, Bindseil testified in this matter that she did not receive the referee's call, due "probably" to difficulties setting up Employer's phone system. C.R., Item No. 16, N.T., 7/9/20, at 4-6. She explained that April 20, 2020, was the first day she was able to return to Employer's store after it closed due to COVID-19, which may have contributed to the issue. *Id.* at 4. Bindseil also testified she was awaiting the referee's call at the time of the hearing and tried to contact the referee when she did not receive a call. *Id.* Bindseil supported her testimony with documentary evidence, including copies of emails she sent in an attempt to contact the referee. C.R., Item No. 11, Employer's Petition for Appeal with Attachments, 4/30/20, at 92-94, 118-20. As the factfinder, the Board was free to credit Bindseil's testimony and evidence. *Hubbard*, 252 A.3d at 1185 n.2 (citing *Peak*, 501 A.2d at 1388); *see also McNeill v. Unemployment Comp. Bd. of Rev.*, 511 A.2d 167, 169 (Pa. 1986) (explaining, under Section 101.24(a), that: "[T]he Board must make an independent determination that the reasons set forth constitute proper cause."). Thus, we conclude that Claimant's challenge to the Board's proper cause finding is meritless.

## B. Willful Misconduct

Claimant next challenges the Board's conclusion that he was ineligible for UC benefits due to willful misconduct. Generally, Claimant emphasizes the severity of

his sciatica and questions Employer's motives for opposing his attempt to obtain UC benefits. Claimant's Br. at 7-9. With respect to his alleged absenteeism, he argues he could not provide Employer with a specific date for his return to work because his doctors could not predict a date. *Id.* Claimant nonetheless insists he provided Employer with updates about his medical condition and indicated he would return to work on January 28, 2020. *Id.* at 9. He also questions the evidence underlying the Board's decision, arguing it improperly relied on documents the referee excluded as hearsay. *Id.* at 8-10.

Section 402(e) directs that a claimant will be ineligible for UC benefits if "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is 'employment.'" 43 P.S. § 802(e). Case law defines "willful misconduct" as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employe[e]'s duties and obligations to the employer.

*Myers v. Unemployment Comp. Bd. of Rev.*, 625 A.2d 622, 625 (Pa. 1993) (quoting *McLean v. Unemployment Comp. Bd. of Rev.*, 383 A.2d 533, 535 (Pa. 1978)).

The employer bears the burden of proving that the claimant committed willful misconduct. *Grand Sport Auto Body v. Unemployment Comp. Bd. of Rev.*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (*en banc*) (citing *Docherty v. Unemployment Comp. Bd. of Rev.*, 898 A.2d 1205, 1208 (Pa. Cmwlth. 2006)). If the employer satisfies this initial hurdle, the burden shifts to the claimant to establish good cause for his or her actions. *Id.* (citing *McKeesport Hosp. v. Unemployment Comp. Bd. of Rev.*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993)). Good cause exists where the claimant's actions

11

"are justifiable and reasonable under the circumstances." *Id.* (quoting *Docherty*, 898 A.2d at 1208-09).

"Excessive absenteeism or tardiness may constitute willful misconduct." *Id.* Even if an employer does not have a work rule in place, this Court has characterized the habitual failure to arrive for work on time and when scheduled as "inimical to an employer's interest" and contrary to the standards of behavior that an employer has the right to expect. *Ellis v. Unemployment Comp. Bd. of Rev.*, 59 A.3d 1159, 1163 (Pa. Cmwlth. 2013) (quoting *Fritz v. Unemployment Comp. Bd. of Rev.*, 446 A.2d 330, 333 (Pa. Cmwlth. 1982)). Illness is a good cause defense to willful misconduct due to absenteeism. *Owens v. Unemployment Comp. Bd. of Rev.*, 748 A.2d 794, 798 (Pa. Cmwlth. 2000) (citing *McKeesport Hosp.*, 625 A.2d at 114). A claimant's illness will not establish good cause, however, where the claimant fails to properly report his or her absences. *See Schlappich v. Unemployment Comp. Bd. of Rev.*, 485 A.2d 855, 857 (Pa. Cmwlth. 1984) (citing *Manatawny Manor v. Unemployment Comp. Bd. of Rev.*, 401 A.2d 424 (Pa. Cmwlth. 1979)); *Gelles v. Unemployment Comp. Bd. of Rev.*, 452 A.2d 91, 92 (Pa. Cmwlth. 1982) (citing *Gochenauer v. Unemployment Comp. Bd. of Rev.*, 429 A.2d 1246, 1248 (Pa. Cmwlth. 1981)).

In this matter, Employer presented documentation, including emails between Claimant and Employer, revealing that Claimant was repeatedly absent from work. Employer therefore met its initial burden by establishing that Claimant engaged in conduct contrary to its interests and disregarded standards of behavior it had the right to expect. *Ellis*, 59 A.3d at 1162-63. Moreover, although Claimant may have missed work due to illness, Employer's documentation reveals that he failed to demonstrate

12

good cause, because he did not report many of his absences.[10] *See Schlappich*, 485 A.2d at 857 (citing *Manatawny Manor*, 401 A.2d 424).

Employer's documentation indicates Claimant called off work for December 27 and 28, 2019, and failed to appear for work without calling off on December 30, 2019. C.R., Item No. 11, Employer's Petition for Appeal with Attachments, 4/30/20, at 98, 109, 124, 135. Claimant called off work again for January 3, 2020, but, thereafter, made no contact at all until Employer sent an email threatening to terminate his employment on January 21, 2020. *Id.* at 100, 109, 126-27, 135. In total, Claimant had nine unreported absences from work, eight of which occurred during the two and one-half weeks between January 3, 2020, and his belated response to Employer on January 22, 2020. *Id.* at 109, 135. Claimant failed to report these absences despite Employer's requests for an update and its policy warning that excessive absences or absences without notice could result in termination. *Id.* at 98-100, 108-09, 124-26, 134-35. Claimant acknowledged this lack of contact in his response on January 22, 2020, apologizing that he had not "been in touch for a[]while." *Id.* at 101, 109, 127, 135.

It is important to add that Claimant's limited communications would not have alerted Employer that he would be absent from work for any extended time. Before Claimant's absence on December 27 and 28, 2019, he merely informed Employer that he had "been sick lately" and would "[p]robably" be out. *Id.* at 98, 109, 124, 135. When Claimant called off work for January 3, 2020, he informed Employer that he had an appointment at a pain clinic "with the doctor who works on my back,"

---

[10] Regarding Claimant's argument that the Board improperly considered hearsay documents, our review of the record reveals that Claimant's representative objected only once during the hearing on April 20, 2020, to the letter terminating Claimant's employment, but that he did not object to any of the documentation Employer presented during the hearing on July 9, 2020, which included the same letter. C.R., Item No. 16, N.T., 4/20/20, at 4-5; C.R., Item No. 16, N.T., 7/9/20, at 4.

13

and that he may receive a cortisone shot. *Id.* at 109, 135. Further, our review of the record supports the Board's finding that Claimant "offered no credible explanation for why his condition prevented him from **reporting** his absences" by placing a phone call or sending an email between January 3, 2020, and January 22, 2020. *See* C.R., Item No. 17, Board's Order, 10/2/20, at 2 (emphasis added). When Employer sent an email threatening to terminate Claimant's employment, he was able to respond the very next day. *Id.* at 101, 109, 127, 135.

As we emphasized above, it was within the Board's purview as the factfinder in this matter to credit Employer's evidence. *Hubbard*, 252 A.3d at 1185 n.2 (citing *Peak*, 501 A.2d at 1388). Although Claimant urges this Court to view the evidence in a manner favorable to him, we must view the evidence in the light most favorable to Employer as the prevailing party before the Board. *Sweeney*, 74 A.3d at 1177 n.1 (citing *Taylor*, 378 A.2d at 831). Accordingly, Claimant's challenge to the Board's willful misconduct determination does not entitle him to relief.[11]

---

[11] As Claimant's failure to properly report his repeated absences was a sufficient basis for the Board's willful misconduct determination, we need not consider the Board's additional reasoning that Claimant did not produce documentation from a doctor establishing when he was cleared to return to work and what his work limitations might be. We do, however, note that our review indicates Employer requested this documentation for the first time on January 22, 2020, gave Claimant only two days to comply, and terminated his employment a week after its initial request, on January 29, 2020, even though Claimant had produced at least some documentation. *See Klampfer v. Unemployment Comp. Bd. of Rev.*, 182 A.3d 495, 501 (Pa. Cmwlth. 2018) (citing *Bogan v. Unemployment Comp. Bd. of Rev.*, 447 A.2d 708 (Pa. Cmwlth. 1982)) (concluding no willful misconduct existed where the claimant's "attempts to obtain the doctor's note within a week's time, while unsuccessful, did not evince a willful disregard of [the m]anager's request for documentation").

### III. Conclusion

Based on the foregoing, we conclude that Claimant's issues are meritless. We therefore affirm the Board's October 2, 2020 order, which reversed the referee's decision and deemed Claimant ineligible for UC benefits.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Martin O. Roethlein,        :
        Petitioner    :
        :
    v.        :  No. 1102 C.D. 2020
        :
Unemployment Compensation    :
Board of Review,        :
        Respondent    :

# **O R D E R**

**AND NOW**, this 24th day of February 2023, the October 2, 2020 order of the Unemployment Compensation Board of Review is **AFFIRMED**.

_____
STACY WALLACE, Judge